(37 Misc. Rep. 207.)

### KELLEY v. ROOT.

(Supreme Court, Special Term, New York County. February, 1902.)

CONTRACT—REFORMATION.

Where a party to a proposed contract wrote a letter to the other party, stating the terms thereof, and a month thereafter a formal written contract was executed, it will be presumed to express the intent of the parties, and a reformation thereof will not be made unless the evidence of a mutual mistake therein was of the most substantial character.

Action by Daniel J. Kelley against Charles T. Root. Complaint dismissed.

Einstein, Townsend, Guiterman & Shearn, for plaintiff.
Ludlow & McKnight, for defendant.

FITZGERALD, J. Plaintiff and defendant were prior to October 18, 1899, the owners of or controlled the entire capital stock of the corporation known as the American Queen, upon which date plaintiff purchased the defendant's stock, and became the sole stockholder of the corporation. It is now sought to reform the contract made between the parties on that date by inserting therein the words, "that the plaintiff should not be required or obligated to pay any of said notes, or any part thereof, if at the maturity of the said notes the corporation should not be upon a paying basis." Negotiations for a sale had been pending some time, and discussions had on different occasions regarding the property; and on September 14, 1899, defendant orally agreed to sell to the plaintiff his stock in the American Queen for the sum of $5,000, and to accept in payment therefor five notes of the plaintiff, for $1,000 each, payable

in 12, 18, 24, 36, and 42 months. This oral agreement resulted in
the preparation of a letter by the defendant, addressed to himself,
and given by him to plaintiff, who took it to his office, and had a
typewritten copy thereof prepared by his wife, which copy was signed
by plaintiff, and handed by him to defendant. This letter was as
follows:

"Dear Mr. Root: I agree with you that, as I must now do all the work
of the Queen, and take all the responsibility of its management, I ought to
be its sole owner. As you are aware, I am not in shape to pay what your
stock is worth, but this I will do: Make out five notes, of $1,000 each, bear-
ing 6 per cent., and falling due in twelve, eighteen, twenty-four, thirty-six,
and forty-two months, or sooner, at my option, and I will execute them, giv-
ing you as security the stock you now hold, and an insurance policy on my
life for at least $5,000, the premiums on which I agree, as part of this con-
tract, to keep up until all the notes are paid. I will also, by the end of this
month, take your name off all our bills, letter heads, and other stationery,
signs, etc., so as to eliminate you entirely from the business. I will also
hand you the insurance policy by that time."

Plaintiff now claims that at one of the preceding interviews the
defendant said, "Mr. Kelley, I won't hold you for the notes if the
Queen does not pay." Plaintiff, subsequent to the letter of Sep-
tember 16th, told defendant that he would like to have a contract
drawn by a lawyer; and defendant then, at plaintiff's request, gave
him a letter of introduction to Mr. Henry White, an attorney, upon
whom plaintiff called, and who, at his request, and from such memo-
randum as plaintiff, to use his own words, "thought it necessary to
furnish," prepared the contract dated October 18, 1899. This in-
strument was signed by both parties,—first by defendant, who handed
it to plaintiff; then by plaintiff, who returned it to defendant with
his signature attached thereto. The letter was written nearly a
month before the formal contract was executed, and there is noth-
ing therein stated from which any inference can be drawn that de-
fendant intended to dispose of his stock with the understanding
that, in case the publication failed to pay, the plaintiff would be re-
lieved from liability on his notes. The defendant denies absolutely
that he ever made the statement, "Mr. Kelley, I won't hold you
for the notes if the Queen does not pay." It is settled by abundant
authority that a written instrument will be presumed to have been
carefully prepared, and to express the deliberate intention of the
parties, and the grade and degree of proof required to entitle a plain-
tiff to a reformation of such a contract must be of the most sub-
stantial and convincing character. Christopher & T. St. R. Co. v.
Twenty-Third St. Ry. Co., 149 N. Y. 58, 43 N. E. 538; Lyman v.
Insurance Co., 17 Johns. 373. It must also appear that the mistake
was mutual, so that the intention of neither party was expressed.
Paine v. Jones, 75 N. Y. 593. The evidence adduced by the plain-
tiff herein upon the trial failed to come within the requirements of
the rule deducible from the entire volume of adjudications upon
this subject, and the complaint must be dismissed, with costs, and
judgment ordered for defendant on the counterclaim.

Complaint dismissed, with costs, and judgment ordered for de-
fendant on counterclaim.